## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **PACSEC3, LLC,**<br>**Plaintiff,**<br><br>**v.**<br><br>**AXWAY INC.,**<br>**Defendant** | **Civil Action No. _____**<br><br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, PacSec3, LLC, ("PacSec3") files this Original Complaint and demand for jury trial seeking relief from patent infringement of the claims of US Patent No. 7,523,497 ("the '497 Patent" or the "Patent-in-Suit") by AXWAY, Inc. ("Axway" or "Defendant").

## I.   THE PARTIES

1.      Plaintiff PacSec3, LLC is a Texas Limited Liability Company with its principal place of business located at 5900 Balcones Dr. Ste. 100, Austin, Texas 78731-4298.

2.      On information and belief, Defendant is a Deleware Corporation. Defendant has its principal office at 16220 N Scottsdale Road, Suite 500, Scottsdale, AZ 85254. Defendant has a **regular and established place of business** at 1000 Parkwood Circle, SE, Suite 900, Atlanta, GA  30339. On information and belief,

Defendant sells and offers to sell products and services throughout the United States, including in this judicial district, and introduces products and services that perform infringing methods or processes into the stream of commerce knowing that they would be sold in this judicial district. Defendant has a registered agent, The Corpoation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. Defendant can be served through its registered agent, at its place of business, or anywhere else it may be found.

## II.    JURISDICTION AND VENUE

3.    This civil action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*., including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285 based on Defendant's unauthorized commercial manufacture, use, importation, offer for sale, and sale of the Accused Products in the United States. This is a patent infringement lawsuit over which this Court has subject matter jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331, 1332, and 1338(a).

4.    This United States District Court for the Northern District of Georgia, Atlanta has general and specific personal jurisdiction over Defendant because, directly or through intermediaries, Defendant has committed acts within the District giving rise to this action and are present in and transact and conduct business in and with residents of this District and other Districts through out the United States.

5.     Plaintiff's cause of action arises, at least in part, from Defendant's contacts with, and activities in, this District.

6.     Defendant has committed acts of infringing the patent-in-suit within this District by making, using, selling, offering for sale, and/or importing in or into this District and elsewhere, products claimed by the patent-in-suit, including without limitation products made by practicing the claimed methods of the patent-in-suit. Defendant, directly and through intermediaries, makes, uses, sells, offers for sale, imports, ships, distributes, advertises, promotes, and/or otherwise commercializes such infringing products into this District others. Defendant regularly conducts and solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from goods and services provided to residents of this District and others.

7.     This Court has personal jurisdiction over Defendant, in part, because Defendant does continuous and systematic business in this District, as well as having a place of business in this District, by providing infringing products and services to the residents of this District that Defendant knew would be used within this District, and by soliciting business from the residents of this District. For example, Defendant is subject to personal jurisdiction in this Court because, *inter alia*, Defendant maintains     its     North     American     Office     in     this     District,

(https://www.axway.com/en/locations) and directly and through agents regularly does, solicits, and transacts business in this District. Also, Defendant has hired and is hiring within this District for positions that, on information and belief, relate to infringement of the patent-in-suit. Accordingly, this Court's jurisdiction over the Defendant comports with the constitutional standards of fair play and substantial justice and arises directly from the Defendant's purposeful minimum contacts with the State of Georgia.

8.    Furthermore, this Court has personal jurisdiction over Defendant because in addition to Defendant's online website and advertising within this District, Defendant has also made its products available within this judicial district and advertised to residents within the District to hire employees to be located in this District.

9.    The amount in controversy exceeds $75,000 exclusive of interests and costs.

10.    Venue is proper in this Court under 28 U.S.C. § 1400(b) based on information set forth herein, which is hereby repeated and incorporated by reference. Further, upon information and belief, Defendant has committed or induced acts of infringement, and/or advertise, market, sell, and/or offer to sell products, including infringing products, in this District. In addition, and without limitation, Defendant

has regular and established places of business throughout this District, including at least its regular and established place of business at 1000 Parkwood Circle, SE, Suite 900, Atlanta, GA 30339.

## III.  INFRINGEMENT

### A. Infringement of the '497 Patent

11.    Plaintiff incorporates by reference paragraphs 1-10 as if fully presented herein.

12.    On 2009, U.S. Patent No. 7,523,497 ("the '497 patent," included as **EXHIBIT A**) entitled "PACKET FLOODING DEFENSE SYSTEM," was duly and legally issued by the U.S. Patent and Trademark Office.  PacSec3, LLC owns the '497 Patent by assignment.

13.    The '497 patent relates to a novel and improved manner and system of defense to a data packet flood attack.

14.    Defendant offers for sale, sells and manufactures one or more firewall systems that infringes one or more claims of the '497 Patent, including claim 10, literally or under the doctrine of equivalents. Defendant put the inventions claimed by the '497 Patent into service, i.e., used them, and; but for Defendant's actions, the claimed-inventions embodiments involving Defendant's products and services would never have been put into service.  Defendant's acts complained of herein

caused those claimed-invention embodiments as a whole to perform, and Defendant's procurement of monetary and commercial benefit from it.

15.    Support for the allegations of infringement may be found in **Exhibit B**, a claim chart for claim 10, provided herewith.   The Accused Instrumentality is Axway Amplify and related products.

16.    Defendant has and continues to induce infringement. Defendant has actively encouraged or instructed others, e.g., its customers and/or the customers of its related companies, and continues to do so, on how to use its products and services e.g., Axway Amplify, and related services that provide services across the Internet such as to cause infringement of claim 10 of the '497 patent, literally or under the doctrine of equivalents.  Moreover, Defendant has known of the '497 patent and the technology underlying it from at least the filing date of the lawsuit.[1]  For clarity, direct infringement is previously alleged in this complaint.

17.    Defendant has and continues to contributorily infringe. Defendant has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and services (e.g., instructing customers and others on the use of a packet flooding defense and related systems through its website and product instruction manuals) such as to cause

---

[1] Plaintiff reserves the right to amend if discovery reveals an earlier date of knowledge.

infringement of one or more of claim 10 of the '497 patent, literally or under the doctrine of equivalents. Moreover, Defendant has known of the '497 patent and the technology underlying it from at least the filing date of the lawsuit.[2] For clarity, direct infringement is previously alleged in this complaint. The product's and services' only reasonable use is an infringing use and there is no evidence to the contrary. The product and service is not a staple commercial product and Defendant had reason to believe that the customer's use of the product and/or service would be an infringing use. As shown on Defendant's website at https://docs.axway.com/bundle/axway_resources/page/amplify_api_management_platform_security_white_paper.html, for example, Defendant offers the products and/or service with instruction or advertisement that suggests an infringing use.

18.    On information and belief, Defendant's infringement of the '497 Patent has been willful and merits increased damages.

19.    On information and belief, Defendant has made no attempt to design around the claims of the '497 Patent.

20.    On information and belief, Defendant did not have a reasonable basis for believing that the claims of the '497 Patent were invalid.

---

[2] Plaintiff reserves the right to amend if discovery reveals an earlier date of knowledge.

21. On information and belief, Defendant's Accused Instrumentality is available to businesses and individuals throughout the United States and including in this District.

22. Plaintiff has been damaged as the result of Defendant's infringement.

23. The claim chart attached hereto as **Exhibit B** describes how the elements of an exemplary claim from the '497 Patent are infringed by the Accused Instrumentality. This provides details regarding only one example of Defendant's infringement, and only as to a single patent claim. These allegations of infringement are preliminary and are therefore subject to change.

24. Defendant has caused and will continue to cause PacSec3 damage by direct and indirect infringement (including inducement and contributory) of the claims of the '497 Patent.

## IV.  CONDITIONS PRECEDENT

25. Plaintiff has never sold a product.  Upon information and belief, Plaintiff's predecessor-in-interest has never sold a product or has marked any product sold as required under 35 U.S.C. §287.  Plaintiff is a non-practicing entity, with no products to mark.  Plaintiff has pled all statutory requirements to obtain pre-suit damages.  Further, all conditions precedent to recovery are met.  Under the rule

of reason analysis, Plaintiff has taken reasonable steps to ensure marking by any licensee producing a patented article.

26.     Plaintiff and its predecessors-in-interest have entered into settlement licenses with several defendant entities, but none of the settlement licenses were to produce a patented article, for or under the Plaintiff's patents. Duties of confidentiality prevent disclosure of settlement licenses and their terms in this pleading but discovery will show that Plaintiff and its predecessors-in-interest have substantially complied with Section 287(a). Furthermore, each of the defendant entities in the settlement licenses did not agree that they were infringing any of Plaintiff's patents, including the patent-in-Suit, and thus were not entering into the settlement license to produce a patented article for Plaintiff or under its patents. Further, to the extent necessary, Plaintiff will limit its claims of infringement to method claims and thereby remove any requirement for marking.

27.     To the extent Defendant identifies an alleged unmarked product produced for Plaintiff or under Plaintiff's patents, Plaintiff will develop evidence in discovery to either show that the alleged unmarked product does not practice the patent-in-suit and that Plaintiff has substantially complied with the marking statute. Defendant has failed to identify any alleged patented article for which Section 287(a)

would apply.  Further, Defendant has failed to allege any defendant entity produce a patented article.

28.    The policy of § 287 serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that the article is patented; and (3) aiding the public to identify whether an article is patented. These policy considerations are advanced when parties are allowed to freely settle cases without admitting infringement and thus not require marking. All settlement licenses were to end litigation and thus the policies of §287 are not violated. Such a result is further warranted by 35 U.S.C. §286 which allows for the recovery of damages for six years prior to the filing of the complaint.

29.    For each previous settlement license, Plaintiff understood that (1) the settlement license was the end of litigation between the defendant entity and Plaintiff and was not a license where the defendant entity was looking to sell a product under any of Plaintiff's patents; (2) the settlement license was entered into to terminate litigation and prevent future litigation between Plaintiff and defendant entity for patent infringement; (3) defendant entity did not believe it produced any product that could be considered a patentable article under 35 U.S.C. §287; and, (4) Plaintiff believes it has taken reasonable steps to ensure compliance with 35 U.S.C. §287 for each prior settlement license.

30.    Each settlement license that was entered into between the defendant entity and Plaintiff was negotiated in the face of continued litigation and while Plaintiff believes there was infringement, no defendant entity agreed that it was infringing.  Thus, each prior settlement license reflected a desire to end litigation and as such the policies of §287 are not violated.

## V.    JURY DEMAND

31.    Plaintiff requests a trial by jury on issues so triable by right.

## VI.    PRAYER FOR RELIEF

WHEREFORE, PacSec3 prays for relief as follows:

a.    enter judgment that Defendant has infringed the claims of the '497 patent through selling, offering for sale, manufacturing, and inducing others to infringe by using and instructing to use Defendant's products;

b.    award PacSec3 damages in an amount sufficient to compensate it for Defendant's infringement of the Patent-in-Suit in an amount no less than a reasonable royalty or lost profits, together with pre-judgment and post-judgment interest and costs under 35 U.S.C. § 284;

c.    award PacSec3 an accounting for acts of infringement not presented at trial and an award by the Court of additional damage for any such acts of infringement;

d.  declare this case to be "exceptional" under 35 U.S.C. § 285 and award PacSec3 its attorneys' fees, expenses, and costs incurred in this action;

e.  declare Defendant's infringement to be willful and treble the damages, including attorneys' fees, expenses, and costs incurred in this action and an increase in the damage award pursuant to 35 U.S.C. § 284;

f.  a decree addressing future infringement that either (if) awards a permanent injunction enjoining Defendant and its agents, servants, employees, affiliates, divisions, and subsidiaries, and those in association with Defendant from infringing the claims of the Patent-in-Suit, or (ii) awards damages for future infringement in lieu of an injunction in an amount consistent with the fact that for future infringement the Defendant will be an adjudicated infringer of a valid patent, and trebles that amount in view of the fact that the future infringement will be willful as a matter of law; and

g.  award PacSec3 such other and further relief as this Court deems just and proper

Respectfully submitted this 16th day of October 2024,

**\*SIGNATURE CONTINUED ON NEXT PAGE\***

12/13

**THE DUCOS LAW FIRM, LLC**
 Alexander Shunnarah Trial Attorneys,
 of Counsel

*/s/ Kristina Ducos*
Kristina Ducos
Georgia State Bar No. 440149
600 Peachtree Street NE, Suite 2210
Atlanta, Georgia 30308
(404) 469-9574 (telephone)
(470) 220-5130 (fax)

&

**Ramey LLP**

*/s/ William P. Ramey, III*
William P. Ramey, III
Texas Bar No. 24027643
wramey@rameyfirm.com
Jeffrey E. Kubiak
Texas Bar No. 24028470
jkubiak@rameyfirm.com
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)
***Attorneys for WirelessWerx IP, LLC***

# EXHIBIT A



US007523497B2

(12) **United States Patent**     (10) **Patent No.:**     **US 7,523,497 B2**

Cohen     (45) **Date of Patent:**     **Apr. 21, 2009**

---

(54) **PACKET FLOODING DEFENSE SYSTEM**

(76) Inventor:  **Donald N. Cohen**, 2815 Haddington Dr., Los Angeles, CA (US) 90064

( * ) Notice:  Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 719 days.

(21) Appl. No.: **10/841,064**

(22) Filed:  **May 7, 2004**

(65)  **Prior Publication Data**

US 2004/0230839 A1    Nov. 18, 2004

**Related U.S. Application Data**

(63) Continuation of application No. 09/715,813, filed on Nov. 16, 2000, now Pat. No. 6,789,190.

(51) **Int. Cl.**
   *G06F 11/30*    (2006.01)
(52) **U.S. Cl.** .......................... **726/22**; 726/25; 709/235; 709/238; 709/239; 709/240; 370/229; 370/231; 370/235; 370/237
(58) **Field of Classification Search** .................... 726/22
   See application file for complete search history.

(56)  **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 5,007,052 | A | * | 4/1991 | Flammer | 370/389 |
| 5,353,353 | A | * | 10/1994 | Vijeh et al. | 380/29 |
| 5,367,523 | A | * | 11/1994 | Chang et al. | 370/235 |
| 5,434,860 | A | * | 7/1995 | Riddle | 370/232 |

| | | | | | |
|---|---|---|---|---|---|
| 5,455,865 | A | * | 10/1995 | Perlman | 713/153 |
| 5,581,559 | A | * | 12/1996 | Crayford et al. | 370/392 |
| 5,850,515 | A | * | 12/1998 | Lo et al. | 714/43 |
| 6,044,402 | A | * | 3/2000 | Jacobson et al. | 709/225 |
| 6,088,804 | A | * | 7/2000 | Hill et al. | 726/25 |
| 6,412,000 | B1 | * | 6/2002 | Riddle et al. | 709/224 |
| 2002/0032871 | A1 | * | 3/2002 | Malan et al. | 713/201 |

OTHER PUBLICATIONS

Yaar, A., et al, 'StackPi: New Packet Marking and Filtering Mechanisms for DDoS and IP Spoofing Defense', IEEE Journal on Selected Areas in Communications, vol. 24, No. 10, Oct. 2006, entire document, http://ieeexplore.ieee.org/stamp/stamp. jsp?arnumber=01705617.*

* cited by examiner

*Primary Examiner*—Kambiz Zand
*Assistant Examiner*—Ronald Baum
(74) *Attorney, Agent, or Firm*—David A. Belasco; Belasco Jacobs & Townsley, LLP

(57)  **ABSTRACT**

The invention prevents "packet flooding", where an attacker uses up all available bandwidth to a victim with useless data. It can also be used to prevent some other related denial of service attacks. The defense is distributed among cooperating sites and routers. The sites identify data they don't want. The routers help sites to determine which routers forward that data. The sites then ask these routers to reduce the rate at which such data is forwarded. Variations of the defense protect against packet flooding attacks on routers and attacks in which an attacker tries to use up some service offered by a site.

**18 Claims, 9 Drawing Sheets**





Figure 1



Figure 2



Figure 3



Figure 4



Figure 5



Figure 6



Figure 7

Figure 8



Figure 9



US 7,523,497 B2

**1**

## PACKET FLOODING DEFENSE SYSTEM

### CROSS REFERENCE TO RELATED APPLICATIONS

This Application is a continuation of U.S. patent application Ser. No. 09/715,813, filed 11/16/2000 now U.S. Pat. No. 6,789,190.

### FIELD OF INVENTION

The invention pertains to network data transmission controls. More particularly, the invention relates to systems for minimizing the effects of packet flooding attacks directed against computers or routers connected to a network.

### BACKGROUND OF THE INVENTION

Various types of systems have been developed for handling unwanted network data transmission incorporating a number of different technologies. U.S. Pat. No. 5,581,559 issued to Crayford et al. discloses a method that verifies the integrity of data transmitted over a network by comparing the destination address for a data packet with end station addresses stored on network repeaters. Where the destination address fails to match the stored end station addresses, the data packet will be disrupted.

U.S. Pat. No. 6,044,402 issued to Jacobson et al., describes a system in which the only data packets that are transmitted between source and destination network addresses are those that satisfy the blocking policies stored by the blocking data structure. Thus only, "pre-approved" data can flow through such a control mechanism. U.S. Pat. No. 5,455,865, issued to Perlman discloses a system that relies upon a stored list of acceptable packet identifiers at each node in the network. U.S. Pat. No. 5,353,353 issued to Vijeh et al. describes a system that determines the acceptability of data packets based upon a destination address/source address match and will disrupt any packet not satisfying these criteria. U.S. Pat. No. 5,850,515 issued to Lo et al. discloses a system that uses source and destination address matching to determine if packets should be transmitted to an end station or the end station disabled from participating in the network. It also employs a system where an end station can be disabled by a program that determines that a certain number of unauthorized packets have been detected. While other variations exist, the above-described designs for handling unwanted network data transmissions are typical of those encountered in the prior art.

U.S. Pat. No. 5,367,523 to Chang et al. discloses an end-to-end, closed loop flow and congestion control system for packet communications networks which exchanges rate request and rate response messages between data senders and receivers to allow the sender to adjust the data rate to avoid congestion and to control the data flow. Requests and responses are piggy-backed on data packets and result in changes in the input data rate in a direction to optimize data throughput. GREEN, YELLOW and RED operating modes are defined to increase data input, reduce data input and reduce data input drastically, respectively. Incremental changes in data input are altered non-linearly to change more quickly when further away from the optimum operating point than when closer to the optimum operating point. Chang, et al, is intended for end-to-end congestion control. Congestion control assumes cooperation between sender and receiver in solving the problem. In a packet flooding defense, the sender, who is the attacker, will never cooperate with the receiver, his victim. In Chang, et al, the information used is the source/

**2**

destination address pairs in the packet. Chang, et al, assume this information is accurate. In an attack, this information will not be. The attacker will falsify the source address in order to confound the defense if it uses information the attacker controls, such as the source address.

The primary objective of the present invention is to defend against "packet flooding attacks" in which an attacker tries to use up all the bandwidth to the victim by sending data of little or no value (at least to the victim), thereby making more valuable communication with the victim slow or unreliable. A secondary objective is to defend against a related class of attacks in which the attacker tries to use up some other resource by sending more requests of some particular type to the victim than the victim can handle.

One way to view all these attacks is that a resource is being allocated in an unfair way. Well-behaved users request reasonable amounts, while attackers request unreasonable amounts. The most straight-forward allocation mechanism, which might be called "first come first served", ends up allocating almost all of the resource to the attackers. A more "fair" allocation would reduce the impact of an attacker to that of a normal user.

There are two obvious impediments to the "fair service" goal above. One is lack of a reliable way to associate incoming packets with those users among whom bandwidth should be fairly allocated. The other is lack of control over what packets arrive. The solution described here to both of these problems requires help from the routers that forward packets to the victim.

The defense is distributed among cooperating sites and routers. A set of transitively connected cooperating machines is called a "cooperating neighborhood". The quality of the defense is related to the size of the cooperating neighborhood, a larger neighborhood providing better defense. Within the neighborhood it is possible to trace the forwarding path of packets. The association of packets with the "users" is approximated by associating packets with "places" in the cooperating neighborhood from which those packets are forwarded. That is, service will be allocated in a fair (or otherwise reasonable) manner among these places. A "place" in this sense is typically a particular interface from which a packet arrived at a cooperating router.

One such place is likely to be shared by many actual users. An attack will deny service to those users sharing the same place. The advantage of a large number of such places is that each place is shared by fewer users, so an attack will deny service to fewer users. It is advantageous to a user who wants to communicate with a particular machine, to be in the cooperating neighborhood of that machine, since no attacker from another machine can deny him service. Conversely, an attacker wishing to deny service to as many users as possible prefers to share an entry point into the cooperating neighborhood with as many users as possible.

Routers will supply data about the forwarding path of packets that arrive at a site. The site can use this data to allocate service as described above among the packets that arrive. This would solve the problem of unfair service if the packets that arrived were a fair sample of those that were sent to the site. This may not be the case, however, if routers are unable to forward all the packets they receive. To some extent fair service is limited by network topology, i.e., too many legitimate users trying to share parts of the same path will inevitably suffer relative to users of uncrowded paths. However another potential cause for this problem is a flooding attack against a router. That problem is solved by letting routers allocate their services in a similar way to that described above for sites. That is, they allocate the limited

US 7,523,497 B2

**3**

resource of forwarding bandwidth along any given output in a reasonable way among some set of places in the cooperating neighborhood.

The final step in the defense is that cooperating routers will limit the rate at which they forward packets to places that so request. This may not be essential in the allocation of service, but it is useful for limiting the bandwidth used by "unwanted" packets. The rate-limiting request is to be made when a site detects a high rate of unwanted packets coming from one place. This helps the site because it no longer has to process as many unwanted packets. It helps the network by freeing some of the bandwidth for other use.

Even if the traffic is not reduced, the distinction between "wanted" and "unwanted" packets plays an important role in "reasonable" allocation. For a site there are normally some packets (in fact, the great majority) that are expected in a very strong sense. It is reasonable to process these at the highest possible rate. All other packets are not exactly unwanted, but the site is willing to process them at only a limited rate. A reasonable approach is to schedule these as described above (using the places from which they were forwarded) at a limited rate, and regard as "unwanted" those that end up being significantly delayed (or discarded).

SUMMARY OF THE INVENTION

The present invention addresses many of the deficiencies of prior network defense systems and satisfies all of the objectives described above.

A packet flooding defense system for a network providing the desired features may be constructed from the following components. The network includes a plurality of host computers, routers, communication lines and transmitted data packets. Means are provided for classifying data packets received at a host computer as are means for associating a maximum acceptable processing rate with each class of data packet received at the computer. Means are also provided for the computer to find information for packets it receives regarding the path by which the packets came to the computer. Thus, the computer can use the information to allocate the processing rate available for packets of each class in a desired way.

In another variant, a packet flooding defense system for a network including a plurality of host computers, routers, communication lines and transmitted data packets includes means for classifying data packets received at a host computer and means for associating a maximum acceptable processing rate with each class of data packet received at the computer. Means are provided for the computer to determine the rate at which data packets of each class are transmitted from a router to the computer as are means for the router to receive information regarding maximum acceptable transmission rate for data packets being transmitted to the computer. Means are provided for the router to control the rate of transmission of data packets from the router to the computer. Thus, the rate of data packet transmissions received at the computer is kept below the maximum acceptable processing rate for each data packet class by the control of the rate of transmission of data packets from the router, thereby freeing a portion of the network providing data packet transmission to the computer.

In this invention a path (which is not controlled by the attacker) is used to determine the actual direction of the packet flow towards the victim. Bandwidth is allocated based upon path (which is done via packet marks provided by routers leading up to the victim). In other words this invention uses attacker-independent information about the path a

**4**

packet takes to allocate forwarding bandwidth in a router. The part that makes this invention completely different from Chang, et al, is that the information has to be attacker-independent (i.e., sender-independent) in order to work as a defense.

In yet another variant, the router is capable of receiving information regarding maximum acceptable transmission rate for each class of data packet being transmitted to the computer and the router is capable of controlling the rate of transmission of each class of data packets to the computer.

In still another variant, a packet flooding defense system for a network including a plurality of host computers, routers, communication lines and transmitted data packets includes means for classifying data packets received at a router and means for associating a maximum acceptable transmission rate with each class of data packet received at the router. Means are provided for the router to find information for packets it receives regarding the path by which the packets came to the router. Thus, the router can use the information to allocate the transmission rate for each class in a desired way.

In a further variant of the invention, a packet flooding defense system for a network including a plurality of host computers, routers, communication lines and transmitted data packets includes means for classifying data packets received at a first router and means for associating a maximum acceptable transmission rate with each class of data packet received at the first router. Means are provided for the first router to determine the rate at which data packets of each class are transmitted from a second router to the first router as are means for the second router to receive information regarding maximum acceptable transmission rate for data packets being transmitted to the first router. Means are provided for the second router to control the rate of transmission of data packets from the second router to the first router. Thus, the rate of data packet transmissions received at the first router is kept below the maximum acceptable transmission rate for each data packet class by the control of the rate of transmission of data packets from the second router, thereby freeing a portion of the network providing data packet transmission to the first router.

In yet a further variant, the second router is capable of receiving information regarding maximum acceptable transmission rate for each class of data packet being transmitted to the first router and the second router is capable of controlling the rate of transmission of each class of data packets to the first router.

In another variant, a packet flooding defense system for a network including a plurality of host computers, routers, communication lines and transmitted data packets includes at least one firewall. The firewall includes hardware and software serving to control packet transmission between the network and a host computer connected to an internal network. Means are provided for classifying data packets received at the firewall as are means for associating a maximum acceptable transmission rate with each class of data packet received at the firewall. Means are provided for the firewall to find information for packets it receives regarding the path by which the packets came to the firewall. Thus, the firewall can use the information to allocate the transmission rate for each class in a desired way.

In still another variant of the invention, a packet flooding defense system for a network including a plurality of host computers, routers, communication lines and transmitted data packets includes at least one firewall. The firewall includes hardware and software serving to control packet transmission between the network and a host computer connected to an internal network and means for classifying data

US 7,523,497 B2

5

packets received at the firewall. Means are provided for associating a maximum acceptable transmission rate with each class of data packet received at the firewall as are means for the firewall to determine the rate at which data packets of each class are transmitted from a router to the firewall. Means are provided for the router to receive information regarding maximum acceptable transmission rate for data packets being transmitted to the firewall as are means for the router to control the rate of transmission of data packets from the router to the firewall. Thus, the rate of data packet transmissions received at the firewall is kept below the maximum acceptable transmission rate for each data packet class by the control of the rate of transmission of data packets from the router, thereby freeing a portion of the network providing data packet transmission to the firewall.

In a final variant of the invention, the router is capable of receiving information regarding maximum acceptable transmission rate for each class of data packet being transmitted to the firewall and the router is capable of controlling the rate of transmission of each class of data packets to the firewall.

An appreciation of the other aims and objectives of the present invention and an understanding of it may be achieved by referring to the accompanying drawings and the detailed description of a preferred embodiment.

DESCRIPTION OF THE DRAWINGS

FIG. 1 is a schematic view of a first embodiment of the invention illustrating the association of maximum acceptable processing rates for each class of packet received at a computer and a path by which the packets came to the computer;

FIG. 2 is a schematic view of a second embodiment illustrating the association of maximum acceptable processing rates for each class of packet received at a computer, a path by which the packets came to the computer and illustrating information received at a router regarding maximum acceptable transmission rate for data packets being transmitted to the computer;

FIG. 3 is a schematic view of a third embodiment illustrating information received at a router regarding maximum acceptable transmission rate for each class of data packets being transmitted to the computer;

FIG. 4 is a schematic view of a fourth embodiment illustrating association of maximum acceptable transmission rates for each class of packet received at a router and a path by which the packets came to the router;

FIG. 5 is a schematic view of a fifth embodiment illustrating the association of maximum acceptable transmission rates for each class of packet received at a first router, a path by which the packets came to the first router and illustrating information received at a second router regarding maximum acceptable transmission rate for data packets being transmitted to the first router;

FIG. 6 is a schematic view of a sixth embodiment illustrating information received at the second router regarding maximum acceptable transmission rate for each class of data packets being transmitted to the first router;

FIG. 7 is a schematic view of a seventh embodiment of the invention illustrating the association of maximum acceptable transmission rates for each class of packet received at a firewall and a path by which the packets came to the firewall;

FIG. 8 is a schematic view of an eighth embodiment illustrating the association of maximum acceptable transmission rates for each class of packet received at the firewall, a path by which the packets came to the firewall and illustrating infor-

6

mation received at a router regarding maximum acceptable transmission rate for data packets being transmitted to the firewall; and

FIG. 9 is a schematic view of a ninth embodiment illustrating information received at a router regarding maximum acceptable transmission rate for each class of data packets being transmitted to the firewall.

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

FIG. 1 illustrates a packet flooding defense system 10 for a network 14 providing the desired features that may be constructed from the following components. The network 14 includes a plurality of host computers 18, routers 22, communication lines 26 and transmitted data packets 30. Means are provided for classifying data packets 30 received at a host computer 18 as are means for associating a maximum acceptable processing rate 34 with each class 38 of data packet 30 received at the computer 18. Means are also provided for the computer 18 to find information for packets 30 it receives regarding the path 46 by which the packets 30 came to the computer 18. Thus, the computer 18 can use the information to allocate the processing rate for each class 38 in a desired way among the places from which packets 30 are transmitted.

In another variant, as illustrated in FIG. 2, a packet flooding defense system 10 for a network 14 including a plurality of host computers 18, routers 22, communication lines 26 and transmitted data packets 30 includes means for classifying data packets 30 received at a host computer 18 and means for associating a maximum acceptable processing rate 34 with each class 38 of data packet 30 received at the computer 18. Means are provided for the computer 18 to determine the rate at which data packets 30 of each class 38 are transmitted from a router 22 to the computer 18 as are means for the router 22 to receive information regarding maximum acceptable transmission rate 70 for data packets 30 being transmitted to the computer 18. Means are provided for the router 22 to control the rate of transmission of data packets 30 from the router 22 to the computer 18. Thus, the rate of data packet transmissions received at the computer 18 is kept below the maximum acceptable processing rate 34 for each data packet class 38 by the control of the rate of transmission of data packets 30 from the router 22, thereby freeing a portion of the network 14 providing data packet transmission to the computer 18.

In yet another variant, as illustrated in FIG. 3, the router 22 is capable of receiving information regarding maximum acceptable transmission rate 70 for each class 38 of data packet 30 being transmitted to the computer 18 and the router 22 is capable of controlling the rate of transmission of each class 38 of data packets 30 to the computer 18.

In still another variant, as illustrated in FIG. 4, a packet flooding defense system 10 for a network 14 including a plurality of host computers 18, routers 22, communication lines 26 and transmitted data packets 30, includes means for classifying data packets 30 received at a router 22 and means for associating a maximum acceptable transmission rate 74 with each class 38 of data packet 30 received at the router 22. Means are provided for the router 22 to find information for packets 30 it receives regarding the path 50 by which the packets 30 came to the router 22. Thus, the router 22 can use the information to allocate the transmission rate for each class 38 in a desired way.

In a further variant of the invention, as illustrated in FIG. 5, a packet flooding defense system 10 for a network 14 including a plurality of host computers 18, routers 22, communication lines 26 and transmitted data packets 30 includes means

US 7,523,497 B2

7

for classifying data packets 30 received at a first router 54 and means for associating a maximum acceptable transmission rate 78 with each class 38 of data packet 30 received at the first router 54. Means are provided for the first router 54 to determine the rate at which data packets 30 of each class 38 are transmitted from a second router 58 to the first router 54 as are means for the second router 58 to receive information regarding maximum acceptable transmission rate 82 for data packets 30 being transmitted to the first router 54. Means are provided for the second router 58 to control the rate of transmission of data packets 30 from the second router 58 to the first router 54. Thus, the rate of data packet transmissions received at the first router 54 is kept below the maximum acceptable transmission rate 78 for each data packet class 38 by the control of the rate of transmission of data packets 30 from the second router 58, thereby freeing a portion of the network 14 providing data packet transmission to the first router 54.

In yet a further variant, as illustrated in FIG. 6, the second router 58 is capable of receiving information regarding maximum acceptable transmission rate 84 for each class 38 of data packet 30 being transmitted to the first router 54 and the second router 58 is capable of controlling the rate of transmission of each class 38 of data packets 30 to the first router 54.

In another variant, as illustrated in FIG. 7, a packet flooding defense system 10 for a network 14 including a plurality of host computers 18, routers 22, communication lines 26 and transmitted data packets 30 includes at least one firewall 86. The firewall 86 includes hardware and software serving to control packet transmission between the network 14 and a host computer 18 connected to an internal network 90. Means are provided for classifying data packets 30 received at the firewall 86 as are means for associating a maximum acceptable transmission rate 94 with each class 38 of data packet 30 received at the firewall 86. Means are provided for the firewall 86 to find information for packets 30 it receives regarding the path 98 by which the packets 30 came to the firewall 86. Thus, the firewall 86 can use the information to allocate the transmission rate for each class 38 in a desired way.

In still another variant of the invention, as illustrated in FIG. 8, a packet flooding defense system 10 for a network 14 including a plurality of host computers 18, routers 22, communication lines 26 and transmitted data packets 30 includes at least one firewall 86. The firewall 86 includes hardware and software serving to control packet transmission between the network 14 and a host computer 18 connected to an internal network 90 and means for classifying data packets 30 received at the firewall 86. Means are provided for associating a maximum acceptable transmission rate 94 with each class 38 of data packet 30 received at the firewall 86 as are means for the firewall 86 to determine the rate at which data packets 30 of each class 38 are transmitted from a router 22 to the firewall 86. Means are provided for the router 22 to receive information regarding maximum acceptable transmission rate 92 for data packets 30 being transmitted to the firewall 86 as are means for the router 22 to control the rate of transmission of data packets 30 from the router 22 to the firewall 86. Thus, the rate of data packet transmissions received at the firewall 86 is kept below the maximum acceptable transmission rate 94 for each data packet class 38 by the control of the rate of transmission of data packets 30 from the router 22, thereby freeing a portion of the network 14 providing data packet transmission to the firewall 86.

In a final variant of the invention, as illustrated in FIG. 9, the router 22 is capable of receiving information regarding maximum acceptable transmission rate 98 for each class 38 of

8

data packet 30 being transmitted to the firewall 86 and the router 22 is capable of controlling the rate of transmission of each class 38 of data packets 30 to the firewall 86.

The packet flooding defense system 10 has been described with reference to particular embodiments. Other modifications and enhancements can be made without departing from the spirit and scope of the claims that follow.

The invention claimed is:

1. A packet flooding defense system for a network comprising a plurality of host computers, routers, communication lines and transmitted data packets, said system comprising:

means for classifying data packets received at a host computer into wanted data packets and unwanted data packets;

means for associating a maximum acceptable processing rate with each class of data packet received at said computer;

means for said computer to find information for packets it receives regarding the path by which said packets came to said computer via packet marks provided by routers leading to said host computer; said path comprising all routers in said network via which said packets are routed to said computer; and

means in said computer for using said information to allocate the processing rate available for unwanted data packets to be less than or equal to said maximum acceptable processing rate.

2. A packet flooding defense system for a network comprising a plurality of host computers, routers, communication lines and transmitted data packets, said system comprising:

means for classifying data packets received at a host computer into wanted data packets and unwanted data packets; said data packets comprising data packets from all routers in said network via which said data packets are routed to said computer;

means for associating a maximum acceptable processing rate with each class of data packet received at said computer;

means for said computer to determine the rate at which data packets of each class are transmitted from a router to said computer;

means for said router to receive information regarding maximum acceptable transmission rate for data packets being transmitted to said computer;

means for said router to control the rate of transmission of data packets from said router to said computer; and

means in said computer for keeping the rate of data packet transmissions received at said computer below the maximum acceptable processing rate for each data packet class by said control of the rate of transmission of data packets from said router, and freeing a portion of the network providing data packet transmission to said computer.

3. A packet flooding defense system as described in claim 2, wherein:

said router receives information regarding maximum acceptable transmission rate for each class of data packet being transmitted to said computer; and said router controls the rate of transmission of each class of data packet to said computer.

4. A packet flooding defense system for a network comprising a plurality of host computers, routers, communication lines and transmitted data packets, said system comprising:

means for classifying data packets received at a router into wanted data packets and unwanted data packets;

means for associating a maximum acceptable transmission rate with each class of data packet received at said router;

US 7,523,497 B2

| 9 | 10 |

means for said router to find information for packets it receives regarding the path by which said packets came to said router via packet marks provided by routers leading to said host computer;

said path comprising all routers in said network via which said packets are routed to said computer; and

means in said router for said router to use said information to allocate the transmission rate for unwanted data packets to be less than equal to said maximum acceptable transmission rate.

**5**. A packet flooding defense system for a network comprising a plurality of host computers, routers, communication lines and transmitted data packets, said system comprising:

means for classifying data packets received at a first router into wanted data packets and unwanted data packets; said data packets comprising data packets from all routers in said network via which said data packets are routed to said computer;

means for associating a maximum acceptable transmission rate with each class of data packet received at said first router;

means for said first router to determine the rate at which data packets of each class are transmitted from a second router to said first router;

means for said second router to receive information regarding maximum acceptable transmission rate for data packets being transmitted to said first router;

means for said second router to control the rate of transmission of data packets from said second router to said first router; and

means in said first router for keeping the rate of data packet transmissions received at said first router below the maximum acceptable transmission rate for unwanted data packets by said control of the rate of transmission of data packets from said second router, and freeing a portion of the network providing data packet transmission to said first router.

**6**. A packet flooding defense system as described in claim **5**, wherein:

said second router receives information regarding maximum acceptable transmission rate for each class of data packet being transmitted to said first router; and

said second router controls the rate of transmission of each class of data packet to said first router.

**7**. A method of providing packet flooding defense for a network comprising a plurality of host computers, routers, communication lines and transmitted data packets, said method comprising the steps of:

determining a path by which data packets arrive at a host computer via packet marks provided by routers leading to said host computer; said path comprising all routers in said network via which said packets are routed to said computer;

classifying data packets received at said host computer into wanted data packets and unwanted data packets by path;

associating a maximum acceptable processing rate with each class of data packet received at said host computer; and

allocating a processing rate less than or equal to said maximum acceptable processing rate for unwanted data packets.

**8**. A method of providing packet flooding defense for a network comprising a plurality of host computers, routers, communication lines and transmitted data packets, said method comprising the steps of:

classifying data packets received at a host computer into wanted data packets and unwanted data packets; said

data packets comprising data packets from all routers in said network via which said data packets are routed to said computer;

associating a maximum acceptable processing rate with each class of data packet received at said computer;

determining the rate at which data packets of each class are transmitted from a router to said computer;

receiving a maximum acceptable transmission rate for data packets being transmitted to said computer in said router; and

controlling the rate of transmission of data packets from said router to said computer by said router so that data packet transmissions received at said computer are kept below the maximum acceptable processing rate for each data packet class; and

freeing a portion of the network providing data packet transmission to said computer.

**9**. A method as described in claim **8**, in which:

said router receives information regarding maximum acceptable transmission rate for each class of data packet being transmitted to said computer; and

said router controls the rate of transmission of each class of data packet to said computer.

**10**. A method of providing packet flooding defense for a network comprising a plurality of host computers, routers, communication lines and transmitted data packets, said method comprising the steps of:

determining a path by which data packets arrive at said router via packet marks provided by routers leading to said host computer; said path comprising all routers in said network via which said packets are routed to said computer;

classifying data packets received at said router via packet marks provided by routers leading to said host computer by path;

associating a maximum acceptable transmission rate with each class of data packet received at said router; and

allocating a transmission rate equal to or less than said maximum acceptable transmission rate for unwanted data packets.

**11**. A method of providing packet flooding defense for a network comprising a plurality of host computers, routers, communication lines and transmitted data packets, said method comprising the steps of:

classifying data packets received at a first router into wanted data packets and unwanted data packets; said data packets comprising data packets from all routers in said network via which said data packets are routed to said computer;

associating a maximum acceptable transmission rate with each class of data packet received at said first router;

determining by said first router of the rate at which data packets of each class are transmitted from a second router to said first router;

receiving by said second router of information regarding maximum acceptable transmission rate for data packets being transmitted to said first router; and

controlling by said second router of the rate of transmission of data packets from said second router to said first router so that said rate of transmission is below the maximum acceptable transmission rate for each data packet class; and

freeing a portion of the network providing data packet transmission to said first router.

US 7,523,497 B2

11

**12.** A method as described in claim **11**, in which:

said second router receives information regarding maximum acceptable transmission rate for each class of data packet being transmitted to said first router; and

said second router controls the rate of transmission of each class of data packets to said first router.

**13.** A packet flooding defense system for a network comprising a plurality of host computers, routers, communication lines and transmitted data packets, said system comprising:

means for determining a path by which data packets arrive at a host computer via packet marks provided by routers leading to said host computer; said path comprising all routers in said network via which said packets are routed to said computer;

means for classifying data packets received at said host computer into wanted data packets and unwanted data packets by path;

means for assigning a maximum acceptable processing rate to each class of data packet; and

means for allocating a processing rate equal to or less than said maximum acceptable processing rate to said unwanted data packets.

**14.** A packet flooding defense system for a network comprising a plurality of host computers, routers, communication lines and transmitted data packets, said system comprising:

means for classifying data packets received at a host computer into wanted data packets and unwanted data packets; said data packets comprising data packets from all routers in said network via which said data packets are routed to said computer;

means for associating a maximum acceptable processing rate with each class of data packet received at said computer;

means for said computer to determine the rate at which data packets of each class are transmitted from a router to said computer;

means for said router to receive information regarding maximum acceptable transmission rate for data packets being transmitted to said computer; and

means for said router to control the rate of transmission of data packets from said router to said computer so that the rate of data packet transmissions received at said computer is kept below the maximum acceptable processing rate for each data packet class; and

freeing a portion of the network providing data packet transmission to said computer.

**15.** A packet flooding defense system as described in claim **14**, in which:

said router receives information regarding maximum acceptable transmission rate for each class of data packet being transmitted to said computer; and

12

said router controls the rate of transmission of each class of data packet to said computer.

**16.** A packet flooding defense system for a network comprising a plurality of host computers, routers, communication lines and transmitted data packets, said system comprising:

means for a router to determine a path by which said packets came to said router via packet marks provided by routers leading to said router; said path comprising all routers in said network via which said packets are routed to said computer;

means for classifying data packets received at said router into wanted data packets and unwanted data packets by path;

means for associating a maximum acceptable transmission rate with each class of data packet received at said router; and

means for said router to allocate the transmission rate for unwanted data packets to be less than equal to said maximum acceptable processing rate.

**17.** A packet flooding defense system for a network comprising a plurality of host computers, routers, communication lines and transmitted data packets, said system comprising:

means for classifying data packets received at a first router into wanted data packets and unwanted data packets; said data packets comprising data packets from all routers in said network via which said data packets are routed to said computer;

means for associating a maximum acceptable transmission rate with each class of data packet received at said first router;

means for said first router to determine the rate at which data packets of each class are transmitted from a second router to said first router;

means for said second router to receive information regarding maximum acceptable transmission rate for data packets being transmitted to said first router; and

means for said second router to control the rate of transmission of data packets from said second router to said first router so that the rate of data packet transmission received at said first router is kept below the maximum acceptable transmission rate for each data packet class; and

freeing a portion of the network providing data packet transmission to said first router.

**18.** A packet flooding defense system as described in claim **17**, wherein:

said second router receives information regarding maximum acceptable transmission rate for each class of data packet being transmitted to said first router; and

said second router controls the rate of transmission of each class of data packet to said first router.

* * * * *

US007523497C1

(12) **EX PARTE REEXAMINATION CERTIFICATE** (12302nd)

# United States Patent
### Cohen

(10) **Number:** US 7,523,497 C1
(45) **Certificate Issued:** May 22, 2023

---

(54) **PACKET FLOODING DEFENSE SYSTEM**

(75) Inventor: **Donald N. Cohen**, Los Angeles, CA (US)

(73) Assignee: **PACSEC3 LLC**

**Reexamination Request:**
No. 90/014,746, May 3, 2021

**Reexamination Certificate for:**

| | |
|---|---|
| Patent No.: | **7,523,497** |
| Issued: | **Apr. 21, 2009** |
| Appl. No.: | **10/841,064** |
| Filed: | **May 7, 2004** |

**Related U.S. Application Data**

(63) Continuation of application No. 09/715,813, filed on Nov. 16, 2000, now Pat. No. 6,789,190.

(51) Int. Cl.

| | |
|---|---|
| *G06F 11/30* | (2006.01) |
| *H04L 47/10* | (2022.01) |
| *H04L 47/2441* | (2022.01) |
| *H04L 47/32* | (2022.01) |
| *H04L 9/40* | (2022.01) |

(52) **U.S. Cl.**
CPC .......... *H04L 47/10* (2013.01); *H04L 47/2441* (2013.01); *H04L 47/32* (2013.01); *H04L 63/1458* (2013.01)

(58) **Field of Classification Search**
None
See application file for complete search history.

(56) **References Cited**

To view the complete listing of prior art documents cited during the proceeding for Reexamination Control Number 90/014,746, please refer to the USPTO's Patent Electronic System.

*Primary Examiner* — Colin M LaRose

(57) **ABSTRACT**

The invention prevents "packet flooding", where an attacker uses up all available bandwidth to a victim with useless data. It can also be used to prevent some other related denial of service attacks. The defense is distributed among cooperating sites and routers. The sites identify data they don't want. The routers help sites to determine which routers forward that data. The sites then ask these routers to reduce the rate at which such data is forwarded. Variations of the defense protect against pocket flooding attacks on routers and attacks in which an attacker tries to use up some service offered by a site.



US 7,523,497 C1

**1**

**EX PARTE
REEXAMINATION CERTIFICATE**

THE PATENT IS HEREBY AMENDED AS
INDICATED BELOW.

AS A RESULT OF REEXAMINATION, IT HAS BEEN
DETERMINED THAT:

The patentability of claims **7** and **10** is confirmed.

Claims **1**, **4**, **13** and **16** are cancelled.

Claims **2**, **3**, **5**, **6**, **8**, **9**, **11**, **12**, **14**, **15**, **17** and **18** were not
reexamined.

\* \* \* \* \*

**2**

# EXHIBIT B

**Patent Claims Analysis**
**of**
**US7523497 B2: "Packet flooding defense system"**

**against**
**Axway Amplify**

# US7523497B2

United States

Inventor          Donald N. Cohen

Current Assignee  Pacsec3 LLC

## Worldwide applications

2000 US 2001 WO 2004 US

## Application US10/841,064 events

| | |
|---|---|
| 2000-11-16 | Priority to US09/715,813 |
| 2004-05-07 | Application filed by Cohen Donald N |
| 2004-11-18 | Publication of US20040230839A1 |
| 2009-04-21 | Application granted |
| 2009-04-21 | Publication of US7523497B2 |
| 2020-10-02 | First worldwide family litigation filed |
| Status | Active |
| 2022-11-05 | Adjusted expiration |

**Owner name**: PACSEC3 LLC, TEXAS

**Free format text**: ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:COMPUTING SERVICES SUPPORT SOLUTIONS, INC.;REEL/FRAME:053526/0117

**Effective date**: 20200812

CLAIMS

10. A method of providing packet flooding defense for a network comprising a plurality of host computers, routers, communication lines and transmitted data packets, said method comprising the steps of:

determining a path by which data packets arrive at said router via packet marks provided by routers leading to said host computer; said path comprising all routers in said network via which said packets are routed to said computer;

classifying data packets received at said router via packet marks provided by routers leading to said host computer by path;

associating a maximum acceptable transmission rate with each class of data packet received at said router; and

allocating a transmission rate equal to or less than said maximum acceptable transmission rate for unwanted data packets.

| US7523497 B2 Claim 10 | Axway Amplify |
|---|---|
| 10. **A method of providing packet flooding defense for a network comprising a plurality of host computers, routers, communication lines and transmitted data packets, said method comprising the steps of:** | <br><br>Axway Amplify has a packet flooding defense system for a network comprising a plurality of host computers, routers, communication lines and transmitted data packets.<br><br>https://docs.axway.com/bundle/axway_resources/page/amplify_api_management_platform_security_white_paper.html |

| **US7523497 B2 Claim 10** | **Axway** |
|---|---|
| determining a path by which data packets arrive at said router via packet marks provided by routers leading to said host computer; said path comprising all routers in said network via which said packets are routed to said computer; | Plaintiff contends that the managing of API traffic is "**controlled by Axway Control Access Lists and deployed in a protected DMZ**". "**Firewalls are placed in strategic choke points throughout the architecture of solutions**" and "**Each customer environment is deployed into individual Virtual Private Clouds, strictly segmented from other environments.**" "**For the Amplify SaaS platform, the DB has its own security group and own network segment. It does not receive any traffic outside the dedicated customer VPC.**" This means that Axway Amplify must have the ability to determine a path which packets arrive at a router leading to a host computer, because Axway states that "**Each customer environment is deployed into individual Virtual Private Clouds, strictly segmented from other environments.**" <br><br>  <br><br> ***API Firewalling*** <br><br> All applications are installed behind an industry standard firewall, which are patched on a monthly basis. All access is controlled by Axway Control Access Lists and deployed in a protected DMZ. Firewalls are placed strategic choke points throughout the architecture of solutions. Each customer environment is deployed into individual Virtual Private Clouds, strictly segmented from other environments. For the Amplify SaaS platform, the DB has its own security group and own network segment. It does not receive any traffic outside the dedicated customer VPC. We have strict security rules which allow only nodes from the application cluster to make connections to the database. All DB nodes are part of different availability zones (AZ). <br><br> All network devices are installed within a secure perimeter, physically accessible only to authorized personnel, and implemented with appropriate logical security. Where relevant to SaaS services deployed inside the Amplify cloud, there are very strict policies when it comes to interacting with customer data. Axway's underlying trusted cloud infrastructure providers keeps their "virtual endpoints and devices" separate from the customers infrastructure. <br><br> https://docs.axway.com/bundle/axway_resources/page/amplify_api_management_platform_security_white_paper.html |

| US7523497 B2 Claim 10 | Axway |
|---|---|
| classifying data packets received at said router via packet marks provided by routers leading to said host computer by path; | Plaintiff contends that once the **data packets arrive at the router** "**Gateway**", **the data packets are classified** "**The Gateway will detect and block threats**." This ensures that the router "**Gateway**" "**prevents attacks by inspecting the messages passing through it**." To protect the host computer (Data center). |

The Gateway prevents attacks by inspecting the messages passing through it. The Gateway provides API firewalling, content validation and message integrity checks which are in place to only allow legitimate messages to enter an organization.

API Firewalling helps to mitigate against application-level threats, such as cross-site scripting, SQL injection, command injection, cross-site request forgery, etc. The Gateway will detect and block threats (i.e. OWASP top 10). Additionally, messages can be checked to see if they might contain viruses.

Content validation is the ability to ensure that the request is appropriate for the requested API. The validation will check that the incoming request (and response) contains the appropriate parameters and values and that the payload adheres to the APIs schema.

The Gateway will verify the integrity of the signed message (signed tokens, headers, payloads) to confirm that the message has not been tampered with in flight. In addition, it can ensure that some aspects of the payload remain confidential by encrypting, etc.

The Gateway can act as an enforcement point which can delegate to a third-party system to make a decision on whether the message is good or bad (i.e., call ICAP server, PingIntelligence, etc.). The Gateway will enforce the decision from the third-party system.

https://blog.axway.com/learning-center/digital-security/proxy-gateway/api-gateway-capabilities

| US7523497 B2 Claim 10 | Axway |
|---|---|
| **associating a maximum acceptable transmission rate with each class of data packet received at said router; and** | Plaintiff contends that once the data packets are classified into classes (wanted and unwanted data packets), a maximum acceptable transmission rate can be associated with each class of data packet. "**the Gateway sits in the line of traffic, it provides basic load balancing capabilities (Round Robin, Weighted Round Robin, random, etc.) for traffic entering the organization.**" "**The Gateway provides various mechanisms for managing the rate of flow into an organization. It can protect your backend against severe traffic spikes and denial of service attacks.**"  This means that "**load balancing**" **will allow for the maximum acceptable transmission rate for wanted and unwanted data packets.**<br><br>As the Gateway sits in the line of traffic, it provides basic load balancing capabilities (Round Robin, Weighted Round Robin, random, etc.) for traffic entering the organization.<br><br>The Gateway provides various mechanisms for managing the rate of flow into an organization. It can protect your backend against severe traffic spikes and denial of service attacks.<br><br>As it sits in the flow of traffic it can provide traffic throttling and smoothing. IP addresses can be white or blacklisted. Additionally, the Gateway provides various failure patterns, like a circuit breaker or retry policies, to help protect the organization from cascading failures.<br><br>https://docs.axway.com/bundle/sync_datahub/page/configure_rate_limit_speed.html |

| US7523497 B2 Claim 10 | Axway |
|---|---|
| allocating a transmission rate equal to or less than said maximum acceptable transmission rate for unwanted data packets. | Plaintiff contends that Axway will provide **a transmission rate** that is equal to or less than the maximum acceptable transmission rate, for example,  a transmission rate of zero, meaning, "**block threats**". Or the system "**can provide traffic throttling**" to ensure the packets are inspected.<br><br>As the Gateway sits in the line of traffic, it provides basic load balancing capabilities (Round Robin, Weighted Round Robin, random, etc.) for traffic entering the organization.<br><br>The Gateway provides various mechanisms for managing the rate of flow into an organization. It can protect your backend against severe traffic spikes and denial of service attacks.<br><br>As it sits in the flow of traffic it can provide traffic throttling and smoothing. IP addresses can be white or blacklisted. Additionally, the Gateway provides various failure patterns, like a circuit breaker or retry policies, to help protect the organization from cascading failures.<br><br>The Gateway can act as an enforcement point which can delegate to a third-party system to make a decision on whether the message is good or bad (i.e., call ICAP server, PingIntelligence, etc.). The Gateway will enforce the decision from the third-party system.<br><br>The Gateway prevents attacks by inspecting the messages passing through it.  The Gateway provides API firewalling, content validation and message integrity checks which are in place to only allow legitimate messages to enter an organization.  The Gateway will detect and block threats.<br><br>https://docs.axway.com/bundle/sync_datahub/page/configure_rate_limit_speed.html |